UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| United States of America | : | |
| | : | |
| v. | : | No. 19-cr-276-16 |
| | : | |
| Julio Paris | : | |
| | : | October 25, 2021 |
| | : | |

ORDER AND DECISION DENYING
SECOND MOTION FOR COMPASSIONATE RELEASE [DKT. 838]

Before the Court is a motion for compassionate release filed by Defendant, Julio Paris, seeking a sentence reduction to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).  [Mot., Dkt. 838].  Mr. Paris argues that "extraordinary and compelling reasons" warrant a reduction in his sentence due to (1) the ongoing COVID-19 pandemic, which has made his sentence much more punitive than intended, (2) his medical condition that renders him especially vulnerable to serious illness or death if infected with COVID-19, and (3) the 18 U.S.C. § 3553(a) factors as applied to his case.  [*Id.*].  The Court ordered Mr. Paris to supplement his motion to indicate whether he has received or been offered a COVID-19 vaccine.  Mr. Paris indicated in a supplemental filing that he has refused the vaccine for religious reasons. [Suppl., Dkt. 848].  The Government filed an opposition to the motion arguing that (1) Mr. Paris has failed to provide evidence of a heightened risk factor or comorbidity that puts him at risk of life-threatening consequences if infected with COVID-19, (2) Mr. Paris's prior infection, where he had mild to no symptoms, suggests he is less likely to be seriously reinfected, and (3) the § 3553(a) factors do not weigh in favor of release.   [Opp., Dkt. 850].

1

After carefully reviewing the pleadings and exhibits, the Court denies Mr. Paris's second motion for compassionate release.

I.      BACKGROUND

A. Case Background

On May 28, 2020, Mr. Paris executed a plea agreement in which he agreed to plead guilty to conspiracy to distribute and to possess with intent to distribute a mixture and substance containing a detectable amount of heroin and a mixture and substance containing a detectable amount of fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.  [Plea, Dkt. 315].  The plea agreement provided that the estimated custodial sentenced under the United States Sentencing Guidelines was 37 to 46 months.  [*Id.*].   Mr. Paris agreed to waive his right to appeal the sentence if it does not exceed 46 months of imprisonment.  [*Id.*].

On November 12, 2020, Mr. Paris appeared before this Court for sentencing. After considering the § 3553(a) factors, the Court sentenced Mr. Paris to 46 months imprisonment, to be followed by three years supervised release and the $100 special assessment.  [Judgement, Dkt. 682].  The Court also ordered that the time served in state custody, beginning May 4, 2020 until sentencing, is to count as credit towards this sentence.  [*Id.*].  Mr. Paris has served approximately 17 months of the 46 months sentence, which is equivalent to 40% of the sentence imposed.

Three months after sentencing, Mr. Paris filed his first motion for compassionate release.  [First Mot., Dkt. 768].  The Court denied the motion for failure to state good cause.  [Order, Dkt. 782].  Specifically, the Court found that Mr. Paris did not meet his burden in establishing extraordinary and compelling reasons

2

warranting a sentence reduction because his claim of medical vulnerabilities was unsupported by any citations to the 428 pages of medical records provided.  [*Id.*]. The Court denied the motion without prejudice to re-filing with proper citations to the medical records.  [*Id.*].

B. Health Conditions

Mr. Paris claims in his motion that he "suffered a serious infection and a drug-induced liver injury resulting from the same while in the custody of the Connecticut Department of Corrections in 2020."  [Mot. at 5].  The motion goes on to state that "[a]t the time of discharge from Yale [New Haven Hospital] he was indicating liver enzyme abnormalities, for which he should follow up as an outpatient."  [Mot. at 5].  The motion cites to "Yale Record, Pages 71, 133–134" to support this claim.  [*Id.*].  However, the medical records provided to the Court are not paginated in a way that distinguishes "Yale Records" from the other records contained therein.  Nor did the motion provide a table of contents that would allow the Court to distinguish the types of records.  To avoid denying the motion a second time for failure to provide factual support for the relief sought, the Court went through the medical records to ascertain the relevant portion of the voluminous medical record submitted in support of the motion.  This was an unnecessary waste of judicial resources that was undertaken to protect Mr. Paris's rights.

It appears that the motion relies on pages 264 and 323 to 327 of the medical records.  However, these pages do not support Mr. Paris's claim that he has liver abnormalities, let alone establish that Mr. Paris has a medical condition that puts

3

him at risk of serious illness if infected with COVID-19.   Page 264 provides a summary of an August 2020 ultrasound of Mr. Paris's upper right quadrant, which is where the liver is, and concludes the results were "unremarkable."   [Med. Records, PDF p. 264].  The second set of pages, 323 to 327, contain lab results from August 2020, which has a flag on Mr. Paris's MPV level.  [*Id.* at 323–27].  The lab results indicate that the reference range for MPV levels is 6.0 to 11.0 fL and Mr. Paris's MPV level was 11.5 fL.  [*Id.*].  The medical records nor the motion, indicate what an MPV is.  Nor has Plaintiff produced any evidence that what appears to be a nominally heightened MPV level exposes him to a heightened risk of serious illness if he were to contract COVID-19.  The failure to explain the significance of the lab results alone is a justification for rejecting the claim.   However, based on the Court's own research, a high MPV (or mean platelet volume) could be a sign of serious disease—such as cancer—and also "doesn't mean anything on its own."[1] Thus, the Court finds Mr. Paris has failed to establish that he has any liver abnormalities that warrant a sentence reduction.

The motion also reports that "Mr. Paris was already severely ill while an inmate with the Connecticut Department of Corrections as a result of the Covid-19 pandemic" and cites to DOC health records.  Again, Plaintiff did not cite to any portion of these voluminous records, requiring the Court to review the 615 pages of medical records to determine whether there is any factual support for a sentence reduction.  The Court's review revealed that there is none.  Mr. Paris did test

---

[1] *Understanding Your MPV Test Results*, Healthline.com, available at: https://www.healthline.com/health/mpv-test (last visited Apr. 19, 2021).

positive for COVID-19 on January 14, 2021 but he did not experience any COVID-19 symptoms in the weeks following.  [Med. Records at pp 52–60].  Therefore, the Court rejects Mr. Paris's claim that he has experienced serious illness when previously infected with COVID-19 or that he is at heightened risk for a serious illness should he contract COVID-19 again.

## C. Correctional Facility

Mr. Paris reports he is currently serving his period of imprisonment at Donald W. Wyatt Detention Center ("Wyatt") in Rhode Island.  The Court receives regular reports from Wyatt officials on the protocols used to protect the staff and detainees.  Those reports show that Wyatt staff have implemented rigorous and highly effective procedures to guard against the spread of COVID-19 and to assure those who contract the disease are quarantined and treated effectively. Defendant's relatively benign course of COVID-19 and recovery from the disease exemplifies the efficacy of Wyatt's treatment process.

## II.    LEGAL STANDARD

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne*, No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).

I.   ANALYSIS

a.   Exhaustion

T]he First Step Act's exhaustion requirement is not jurisdictional." *United States v. Scparta*, No. 18-cr-578(AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020). "Courts have excused failure to comply with the exhaustion requirement in this context for equitable reasons like futility." *Id.* at *5.

Mr. Paris argues that he does not have to exhaust administrative remedies because an attempt to exhaust would be futile. This is because he is currently at a non-BOP facility. The Government does not address this argument. The Court will assume he is not in BOP custody because the Government has not addressed the issue and thus appears to have conceded it. Further, this Court has previously adjudicated a case where the defendant sought compassionate release from the warden at Wyatt, who denied the request because Wyatt is not a BOP facility. *United States v. Jepsen*, 451 F. Supp. 3d 242, 243 (D. Conn. 2020). That defendant

sought compassionate release from the BOP directly, which also denied the request because the defendant was not at a BOP facility. *Id.* The Court found the exhaustion requirements met. *Id.* at 245.

Here, Mr. Paris is at Wyatt like the defendant in *Jepsen*. The defendant in *Jepsen* was unable to get a review of his request for compassionate release from the facility or from the BOP. The Court does not have a reason to believe that any efforts Mr. Paris would make would result in a different outcome. In other words, any effort made by Mr. Paris to seek a merit-based review of his request for compassionate release would be futile because he is at a non-BOP facility. The Court excuses the failure to exhaust administrative remedies because such efforts would have been futile.

b. <u>Extraordinary and Compelling Reasons</u>

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> [or]

> **(ii) The defendant is--**
> > **(I) suffering from a serious physical or medical condition,**
> > **(II) suffering from a serious functional or cognitive impairment, or**
> > **(III) experiencing deteriorating physical or mental health because of the aging process,**
>
> **that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.**

**U.S.S.G. 1B1.13, Commentary Application Note 1(A).  Any "other" "extraordinary and compelling reason" may also justify relief.  *Id.* at Commentary Application Note 1(D).**

**"[T]he mere existence of COVID-19 in society and the possibility that it might spread to a particular prison alone cannot independently justify compassionate release."  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  But this Court and others have recognized that an inmate's chronic medical condition that elevates his risk of becoming seriously ill from COVID-19 according to the CDC may be such an extraordinary and compelling reason.  *See United States v. Sanchez*, No. 18-CR-00140-VLB-11, 2020 WL 1933815, at \*5 (D. Conn. Apr. 22, 2020) (collecting cases).**

**Here, as articulated above, Mr. Paris has not provided any evidence to support his claim of medical vulnerability that elevates his risk of becoming seriously ill from COVID-19.  His claim of liver injury was contradicted by the medical records provided.  Further, the evidence tends to show he is not at risk of serious illness based on his prior infection where he was symptom free.  Thus, Mr. Paris has not established an extraordinary and compelling reason justifying compassionate release.**

8

Further, even if Mr. Paris did have a chronic medical condition, the most recent report from Wyatt shows that only one inmate/detainee was infected with COVID-19 and over 100 inmates/detainees had received at least one dose of a COVID-19 vaccine.  Meaning, the risk of contracting the virus itself is low.  The risk is even lower for Mr. Paris who has already been infected with COVID-19.  The CDC reports that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[2]

The Court inquired about Mr. Paris' vaccine status to better assess his risk of contracting a serious case of COVID-19.  The Court does not consider Mr. Paris's decision to refuse the vaccine.

The Court finds that Mr. Paris has not met his burden of establishing an extraordinary and compelling reason for his request because (1) he has not established he has a medical condition that puts him at a heightened risk of severe illness or death if infected with COVID-19, (2) Mr. Paris's reduced risk of reinfection, having already contracted the disease and developed natural antibodies (3), the unlikelihood that Mr. Paris would contract a serious case of COVID-19 if he was reinfected and (4) Wyatt's successful track record of mitigating and treating COVID-19.

Therefore, the Court finds that Mr. Paris has failed to establish extraordinary and compelling reasons warranting a sentence reduction to time served.

---

[2]   *Reinfection with COVID-19,* CDC.Gov, available at: https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Apr. 19, 2021).

c. <u>Section 3553(a) Factors</u>

Though the Court has already found the Mr. Paris has failed to establish an extraordinary and compelling reason to justify a sentence reduction, the Court also notes that the § 3553(a) factors do not weigh in favor of a sentence reduction.  This is because the Court just sentenced Mr. Paris last year where it applied the § 3553(a) factors in imposing his sentence.  The sentence as imposed is no greater than necessary to satisfy the § 3553(a) factors.  Contrary to Mr. Paris's argument that his sentence has been more punitive than intended, the Court was well-aware of the COVID-19 pandemic when it sentenced him.  Mr. Paris has pointed to nothing, including his asymptomatic COVID-19 infection, that is different than what was considered at sentencing.  On the contrary, the Court recognized the possibility that Mr. Paris would contract COVID-19 and that he could become seriously ill.  Mr. Paris did contract the disease and did not become seriously ill.  Thus, the conditions of confinement were less dire than the Court knew they could be at the time of sentencing.

Therefore, the § 3553(a) factors weigh against compassionate release.

II.     CONCLUSION

For the aforementioned reasons, the Court denies Mr. Paris's second motion for compassionate release.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated this day in Hartford, Connecticut: October 25, 2021